IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                                   Plaintiff,

        v.                                                              ORDER

TODD STANDS ALONE,                                              18-cr-128-jdp

                                   Defendant.

---

The defendant, Todd Stands Alone, is charged in a one-count indictment with violating 18 U.S.C. § 111(a)(1) and (b). The charge arises from an incident at the Federal Correctional Institution at Oxford in which Stands Alone, in a fit of rage, resisted a correctional officer's orders to stand down. As the officer prepared to use pepper spray against him, Stands Alone pulled a fire extinguisher off the wall, held it up toward the officer, and ultimately discharged it. Stands Alone contends that he grabbed the fire extinguisher defensively and the discharge was accidental, but the officer was injured by the blow-back of fire retardant mixed with pepper spray.

Stands Alone waived his right to a jury trial, so the matter was tried to the court on June 20, 2019. The day before trial, defense counsel filed, ex parte, a "theory of defense." Dkt. 50, Dkt. 52. The theory of defense is based on an interpretation of § 111 endorsed in *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016), that "assault" is an element of a violation of § 111(a)(1) when it is charged as a misdemeanor or felony. Under that interpretation, counsel argues, the indictment charges Stands Alone only with an infraction, not a misdemeanor or a felony, so Stands Alone cannot be punished by imprisonment even if convicted.

Thus two main issues are before the court. The first, a matter of statutory interpretation, is whether an assault is an element of a violation of § 111(b). The second is a factual matter in which I must decide if the government proved beyond a reasonable doubt that Stands Alone committed the offense charged in the indictment. I conclude that assault is not an element of a conviction under § 111(b) and that Stands Alone is guilty.

Also before the court is Stands Alone's renewed motion for release, Dkt. 87, which I will deny. I will order that the Probation Office expedite the preparation of the report of the presentence investigation so that Stands Alone may be sentenced promptly.

## DECISION ON THE BENCH TRIAL

### A.  Preliminary matter

Before turning to the main issues, I address the government's argument that Stands Alone has forfeited or waived his legal argument based on the interpretation of § 111. The government contends that Stands Alone's theory of defense is alleging a defect in the indictment, which is a motion authorized under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. But Rule 12(b)(3) motions "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."

I share the government's concern with defense counsel's tactics. The defense raised a purely legal argument that was plainly available before trial and could have been resolved before the trial on the merits. There's no question that the government was sand-bagged by the last minute, ex-parte disclosure of the theory of defense. And the eve-of-trial disclosure makes the

2

court's job harder because the theory of defense clouded the material factual issues that I had to decide.

Stands Alone contends that the theory of defense is not a motion alleging a defect in the indictment under Rule 12(b)(3)(B). If the theory of defense were a motion under Rule 12(b)(3)(B), it would have to be one under Rule 12(b)(3)(B)(v) for failure to state an offense. Stands Alone says that he does not contend that the indictment fails to state an offense. He contends that it fails to state a misdemeanor or felony. He concedes that the indictment states an offense, but says that the offense is merely an infraction under the sentencing classification in 18 U.S.C. § 3559. This was set out in the Supplementary Theory of the Defense Brief, Dkt. 52, filed a few hours after the original theory of defense. The government did not directly respond to it.

Stands Alone cites no case that suggests that a violation of § 111 might be a mere infraction. His main authority, *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016), says that assault is an element of any conviction under § 111(a)(1), and it says nothing about infractions. It strikes me that this theory is invoked to avoid the requirement in Rule 12 that legal defenses like the one raised here must be brought and resolved before trial.

The government also has a plausible waiver argument. The government alleged a violation of § 111(b), a 20-year felony, and it set out the elements it intended to prove. Dkt. 45, at 3. At the final hearing, Stands Alone, by counsel, confirmed that he had no objection to the government's articulation of the elements.

But because I conclude that Stands Alone's legal defense fails on the merits, I do not have to decide the untimeliness or waiver questions.

**B.  Statutory interpretation**

I turn to the matter of statutory interpretation. The statute at issue, stated in full, reads:

> § 111  Assaulting, resisting, or impeding certain officers or employees
>
> (a) In general.--Whoever--
>
>> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
>>
>> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.

Statutory interpretation begins with the text of the statute, and it ends there if the meaning is plain. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). The terms of the statute should get their "ordinary and popular sense," unless they are specially defined. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). Statutory construction is a "holistic endeavor," that should account for the statute's full text as well as its structure and subject matter. *Trustees of*

*Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996).

Aspects of this statute may present some subtleties, but the parts that matter to this case are unambiguous. Subparagraphs (a)(1) and (a)(2) state the prohibited acts and the targets of those acts. Subparagraph (a)(2) relates to former officers; it's not at issue here. For subparagraph (a)(1), a correctional officer at FCI Oxford qualifies as a person designated in section 1114. The prohibited acts subparagraph (1) are identified with six verbs: "assaults, resists, opposes, impedes, intimidates, or interferes." The acts are modified by the introductory adverb "forcibly," which applies to each of the acts. The disjunctive "or" means that any one of these acts, if done forcibly to a specified officer, violates the statute.

The remainder of the statute sets out the penalties that apply based on the consequences of the prohibited acts. The unenumerated part of subsection (a) specifies the penalties that would apply under three conditions. The first condition occurs when the acts in violation constitute simple assault. The potential penalties are then a fine or imprisonment of not more than a year. The second condition occurs when the act in violation involves physical contact with the "victim of that assault," referring to the assault mentioned under the first condition. The third condition is when the violating act involves the intent to commit another felony, with no victim specified. The penalties under either the second or third condition are a fine and imprisonment of not more than eight years. In this case, these three conditions and the related penalties do not concern us, because subsection (b) applies.

Subsection (b) applies an enhanced penalty whenever the defendant, in the commission of the acts defined in subsection (a), either uses a deadly or dangerous weapon or inflicts bodily

injury. Under either of those conditions, the penalties are a fine or imprisonment of not more than 20 years. Nothing in subsection (b) expressly requires that any "assault" be committed.

So on a plain reading of the statutory text, the government could secure a conviction under § 111(b) if it charges and proves these elements:

1. The defendant forcibly committed one or more of the following six acts: assaults, resists, opposes, impedes, intimidates, or interferes with;

2. The act was committed against a person identified in § 1114 (such as a federal correctional officer) engaged in her official duties at the time; and

3. The defendant inflicts bodily injury.

Stands Alone resists this interpretation, relying on *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016). That case holds that "assault is necessarily an element of any § 111(a)(1) conviction." The *Wolfname* court reasoned that this conclusion was implicit in an earlier case, *United States v. Hathaway*, 318 F.3d 1001 (10th Cir. 2003), which it did not have the authority to overrule. The court also found support for its conclusion in the 2008 amendment to § 111, adding the phrase "where such acts involve physical contact with the victim of that assault" to subsection (a). In the court's view, the 2008 amendment "codified" the *Hathaway* decision. The analysis in *Hathaway*, and in *Wolfname*, was based on the interpretation of the unenumerated part of subsection (a).

But *Wolfname* is not binding here, and the circuits are split on the issue, as the *Wolfname* court recognized. *See United States v. Briley,* 770 F.3d 267, 269 (4th Cir. 2014)*; United States v. Williams*, 602 F.3d 313 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009). The circuits are divided even in their view of the legislative history: the *Williams* court

concluded that the 2008 amendment supported its interpretation that assault was *not* a required element of an offense under § 111.

The Court of Appeals for the Seventh Circuit has not directly decided the issue. Stands Alone says that *United States v. Vallery*, 437 F.3d 626, 633 (7th Cir. 2006), supports his theory of defense. *Vallery* does state, as a settled point of introduction, that § 111 sets out three separate offenses: a misdemeanor simple assault, a felony for "all other cases" of assault, and a felony for assault involving a deadly or danger weapon or resulting in bodily injury. *Id*. at 630. This parsing follows the pattern in *Jones v. United States*, 526 U.S. 227 (1999), which held that the federal carjacking statute set out separate offenses based on the consequences of the defendant's actions, and not a single crime with different sentencing enhancements to be determined by the judge. The issue was whether Vallery's indictment had charged a felony or merely a misdemeanor. The court held that because the indictment did not allege the use of physical force, the indictment charged only simple assault, and thus Vallery could be convicted only of a misdemeanor. But *Vallery* does not directly address the question Stands Alone raises, which is whether at least simple assault is an element of *any* conviction under § 111, particularly one under § 111(b).

To put the issue in the context of this case, the question is whether Stands Alone can be convicted of a felony on the basis of the allegation that he inflicted bodily harm. Following the approach in *Jones* and *Vallery*, § 111 sets out three separate offenses (and not one offense with three sentencing enhancers to be determined by the court). The elements of the 20-year felony under § 111(b) are plainly set out in the statutory text as I have paraphrased them above. The subtleties of the varieties of assault at issue in the unenumerated portion of

subsection (a) are immaterial to the crime set out in subsection (b). *Wolfname*, Stands Alone's main authority, does not address the required elements of a conviction under § 111(b) at all.

Stands Alone's interpretation runs contrary to the textual language, rendering five of the six verbs in subsection (a)(1) superfluous. His interpretation also undermines the purpose of the statute, which is to protect the physical safety of federal officers and the performance of their duties, *United States v. Feola*, 420 U.S. 671, 679 (1975). And it defies common sense. Under Stands Alone's interpretation, a defendant could forcibly resist a federal officer performing her duties, inflict great bodily harm, and yet face no more than an infraction, so long as the defendant did not attempt or threaten physical harm to the officer.

Stands Alone's interpretation is also hard to square with *United States v. Woody*, 55 F.3d 1257 (7th Cir. 1995), and *United States v. Jackson*, 310 F.3d 554 (7th Cir. 2002). *Woody* held that a conviction under § 111(b) does not require any intent to injure, and that the only mental state required under § 111 is that the defendant intended to resist, impede, or obstruct a person who was a federal officer or employee. *Jackson* confirmed that these holdings from *Woody* were still good law, even though after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the infliction of bodily harm was not a sentencing factor for the court, as *Woody* had held.

So, to answer the statutory interpretation at the core of Stands Alone's theory of defense: assault is not an implicit element of a conviction under § 111(b).

## C.  Findings of fact

I start with an evidentiary ruling that I deferred at trial. Stands Alone objected to some of the testimony of Erin Penrose, the environmental and safety compliance manager at FCI Oxford, on the ground that it was expert testimony that had not been disclosed before trial. I overrule the objection. Penrose was not disclosed as an expert, and at points she verged into

expert testimony. But the failure to disclose was harmless. Defense counsel's questions went further into expert territory than the government's. The only fact that emerged from her arguably expert testimony was that the fire retardant in the extinguisher was sodium bicarbonate, a non-toxic compound more commonly known as baking soda.

Based on the evidence submitted and received at the trial, I find the following facts, beginning with those that were mostly undisputed.

Todd Stands Alone was an inmate at the Federal Correctional Institution at Oxford, Wisconsin. On March 1, 2018, Stands Alone was housed in the Marquette Unit, with approximately 100 other inmates.

About 8:45 p.m. that day, senior correctional officer Adam Jordon was conducting an "outer search," which required him inspect the exteriors and look into the windows of FCI Oxford buildings. At the Marquette Unit, Jordon looked into a cell to see Stands Alone tattooing another inmate with a contraband tattoo gun. (At trial, Stands Alone denied that he was in the cell at the time, but I do not credit that testimony for reasons explained below.) Jordan ordered the inmates to remain in place, but they both left, taking the contraband with them. Jordan radioed the officer in charge of Marquette Unit, Shay Decker, to go to Stands Alone's cell, B1, to recover some material.

Decker went to cell B1. Stands Alone was not there. Stands Alone's cellmate was. As instructed by Jordan, who was still at the cell window, Decker removed from the cell a broken pen, a playing card, and the blade from a disposable razor. Decker ordered the cellmate to the day room and closed the cell.

Jordan and two other officers entered Stands Alone's cell and searched it. Jordan and the other officers removed two bags of material from the cell and returned to the compound office after the search.

Stands Alone was agitated and angry after the search. He walked back and forth from his cell to the door of the unit. He was throwing his clothes at the door, shouting something like "you forgot some stuff." In response to Stands Alone's behavior, Decker alerted compound staff to return to the unit. She announced to the inmates that the unit would be locked down. She ordered Stands Alone to move toward the front of the unit, but he returned to his cell. Decker followed him, and ordered him to stand down. Stands Alone continued to shout loudly and angrily that he did not care if he went to the SHU (Special Housing Unit; the segregation unit).

Decker told Stands Alone that she would use pepper spray if he did not stand down. Stands Alone grabbed a fire extinguisher from a hook on the wall, and lifted it to chest height. Decker pulled the pepper spray canister from the pouch at her hip and shouted "OC, OC," as she sprayed at Stands Alone's face. At about the same time, Stands Alone discharged the fire extinguisher. The fire suppressant mixed with the pepper spray, blowing some of it back toward Decker.

Decker activated the body alarm on her radio, and staff rushed to her assistance. Jordan returned to Marquette Unit. The fog of fire suppressant was so thick he could hardly see. He helped Decker get out of the unit.

Jordan went to Stands Alone's cell and ordered him to the floor. Stands Alone was combative and confrontational and refused to get on the floor. Jordan pepper sprayed him, and

Stands Alone continued to refuse to get on the floor. Ultimately Stands Alone was physically restrained and the unit was evacuated.

Decker was covered in fire retardant from her feet to her chest. She could not see, she had trouble breathing, and her skin was burning. A few hours later, she was taken to a local hospital for care. The burning sensations lasted for a couple of days.

The facts stated so far are mostly undisputed. The contested facts involve Stands Alone's intent in grabbing the fire extinguisher and whether he discharged the fire extinguisher intentionally. I find that Stands Alone's testimony about these critical disputed facts is not credible for several reasons.

First, Stands Alone's testimony was contradicted at points by other witnesses who I find credible. Stands Alone told the FBI investigator that he was "completely compliant" with Jordan, which despite Stands Alone's attempts to explain it, was not true. Dkt. 56, at 168. Stands Alone testified that he was not in his cell when Jordan looked in and saw inmates tatooing. Dkt. 56, at 149. That testimony is contradicted by Jordan. More tellingly, it is contradicted by Stands Alone's own witness, Clarence Molina, who testified that he was in the cell with Stands Alone. Dkt. 56, at 176.

Second, Stands Alone's testimony that he grabbed the fire extinguisher as a shield against the pepper spray is fundamentally implausible. The fire extinguisher was heavy (17 pounds when fully charged), awkward, and an ineffective shield against pepper spray. If Stands Alone's intent was to block the spray, it would have been much easier to use his hands, or to simply turn away from Decker.

Third, Stands Alone's claim that he inadvertently discharged the fire extinguisher when he dropped it is undermined by several facts. The safety pin had to be pulled to allow the

handle to be squeezed, and it was zip tied in place. Stands Alone testified that, on his first attempt to grab the fire extinguisher, he accidentally grabbed the tags on attached to the handle. I find it implausible that the pin would have been removed by pulling the tags. As demonstrated at trial, it took some effort to break the zip tie, and the pin had to be slightly turned to be removed. Stands Alone says the discharge was "not very long" and that he threw the extinguisher at the wall as soon as he noticed that it was discharging. Dkt. 56, at 159. I sustained defense counsel's objection to the statement that the fire extinguisher was completely discharged, but the evidence is clear that the discharge was extensive and not just a short burst. The discharge so densely filled the area that Jordan could not see through it, and it covered Decker more or less from her feet to her chest.

The bottom line is that I do not believe Stands Alone's testimony that he grabbed the fire extinguisher to protect himself from the pepper spray or that the discharge of the fire extinguisher was accidental.

I find that Stands Alone grabbed the fire extinguisher to resist Decker's efforts to control him. He held the fire extinguisher at chest height to intimidate Decker, as he yelled "Don't fucking spray me. Don't fucking spray me." Dkt. 56, at 155 (Stands Alone's testimony). He intentionally discharged the fire extinguisher in response to being pepper sprayed. The facts in this paragraph were proven beyond a reasonable doubt.

A significant amount of time at trial was devoted to the question of whether Stands Alone intended to spray Decker with the fire extinguisher. The evidence was sufficient to support a reasonable jury finding that he did. But, as the trier of fact, I find that that was not proven beyond a reasonable doubt. That fact, however, is ultimately immaterial to Stands Alone's guilt.

12

**D. The indictment and the verdict**

The indictment charged Stands Alone as follows:

COUNT 1

On or about March 1, 2018, in the Western District of Wisconsin, the defendant,

TODD STANDS ALONE,

knowingly and forcibly resisted, intimidated, and interfered with S.D., an employee of the U.S. Department of Justice, Federal Bureau of Prisons, while she was engaged in her official duties, and in doing so, inflicted bodily injury to S.D.

(In violation of Title 18, United States Code, Section 111(a)(1) and (b)).

Dkt. 1.

Based on the statutory interpretation set out above, I conclude that the indictment charges the 20-year felony under 18 U.S.C. § 111(b). To sustain a conviction, the government must prove the following elements beyond a reasonable doubt;

1. Stands Alone forcibly committed at least one of the following acts: resisted, intimidated, or interfered with correctional officer Shay Decker;

2. Shay Decker was an employee of the United States engaged in her official duties at the time of the act; and

3. Stands Alone inflicted bodily injury.

I find that the government has sustained its burden on each of the elements.

Officer Decker, as federal correctional officer, was an employee of the United States. She was engaged in her official duties because she was working her shift at FCI Oxford. More specifically, at the time of the incident, she was attempting to maintain order in the Marquette Unit and attempting to end Stands Alone's disruption of the unit. The government need not

13

prove that Stands Alone knew that Decker was a federal employee, *Woody*, 55 F.3d at 1266, although he surely did.

Stands Alone resisted Decker by refusing to comply with her orders and by yelling at her not to spray him while he held up the fire extinguisher. He interfered with her efforts to control the unit by discharging the fire extinguisher. He intimidated her by yelling at her, by raising the fire extinguisher in front of her, and by discharging the fire extinguisher. Stands Alone intended to resist, interfere, and intimidate Decker, which is the only mental state required under § 111.

Each of these acts was done forcibly, because Stands Alone used the fire extinguisher to accomplish them. An act is "forceable" under § 111 if "the defendant made 'such a threat or display of physical aggression toward the officers as to inspire fear of pain, bodily harm, or death.'" *United States v. Graham*, 431 F.3d 585, 589 (7th Cir. 2005) (citations omitted). Stands Alone's aggressive display of the fire extinguisher, and the discharge of the fire extinguisher, inspired in Decker a fear of bodily harm or death.

Bodily injury is not specifically defined for § 111. But the concept is ubiquitous in federal criminal law and it's been given a broad definition. *United States v. DiSantis*, 565 F.3d 354, 362 (7th Cir. 2009). For purposes of this case, I'll use the government's proposed definition, to which Stands Alone did not object: "any injury which is painful and obvious, even if the victim does not seek medical attention . . . including a cut, abrasion, bruise, burn, or disfigurement, physical pain, illness, impairment of a function of a bodily member, organ, or mental faculty, or any other injury to the body no matter how temporary." Dkt. 45, at 3–4. Decker suffered bodily injury from the discharge of the fire extinguisher because her eyesight was impaired and she suffered physical pain from the chemical burns from pepper spray.

14

"Inflict" gets its ordinary meaning. *Jackson*, 310 F.3d at 557. It means something more restrictive than "cause," but it does not require any intent to injure. Even if Stands Alone did not intend to injure Decker, he surely inflicted bodily harm by discharging the fire extinguisher.

Accordingly, I find Stands Alone guilty of the charge in Count 1 of the indictment.

## MOTION FOR RELEASE

Stands Alone has filed another motion for release on bond, Dkt. 87, which the government opposes, Dkt. 90. I will deny the motion, for the same reasons that I denied his previous motion. See Dkt. 74. Stands Alone has an extensive record of offenses, and a poor record on previous release, despite restrictive conditions designed to curb and monitor his alcohol use. The court concludes that his release would pose a risk to public safety that no conditions can reasonably alleviate.

## ORDER

IT IS ORDERED that:

1. Defendant is guilty and is convicted of the charge contained in Court 1 of the indictment.

2. Defendant Todd Stands Alone's motion for release on bond, Dkt. 87, is denied.

3.  The Probation Office shall expedite the preparation of the report of the Presentence investigation and consult with counsel to schedule sentencing.

Entered April 30, 2020.

> BY THE COURT:
>
> /s/
>
> _____
> JAMES D. PETERSON
> District Judge